Filed 1/31/22  In re K.B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | B311006 |
| | (Los Angeles County Super. Ct. Nos. 20CCJP06473, 20CCJP06473 B-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY. L.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed

Elizabeth A. Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

---

Father G.L. appeals from the juvenile court's jurisdictional and dispositional orders establishing jurisdiction over his three children pursuant to Welfare and Institutions Code section 300[1] and removing them from his custody. He challenges the sufficiency of the evidence to support the court's jurisdictional findings based on allegations of domestic violence and marijuana abuse. He also contends the court erred in finding that the removal of the children from his custody was necessary to prevent substantial danger to them. We affirm.

## BACKGROUND

### I. *Referral and Petition*

Father and mother A.W. (mother) have three children: sons Ka. (born 2014), Ke. (born 2016), and Ku. (born 2017). Mother also has an older son, K. (born 2010), from another relationship.[2] Mother and father shared custody of Ka., Ke., and Ku. under a 2019 family law order, which awarded mother primary physical

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother and K.'s father are not parties to this appeal. K. was included in the petition filed in this case, but is not father's child and is not at issue in this appeal. We include facts related to K. to the extent relevant to the issues presented here.

custody and granted father visitation every other weekend.

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) on October 22, 2020, when it received a referral alleging physical abuse of Ku (then age two), and identifying Ka. (age six) and Ke. (age four) as siblings at risk for abuse. Father reported to DCFS that when he picked up Ku. from mother the night before, he saw bruises on the child's back. Father also expressed concern that mother's boyfriend was sleeping in the same bed as the children, that mother was not putting in Ku.'s hearing aids, and that Ka.'s grades had been falling since mother began homeschooling him.

Mother spoke with a DCFS children's social worker (CSW) on November 5, 2020. According to mother, Ka. told her that the weekend prior, he was in the car with father, father's girlfriend, and the girlfriend's son. Ka. told mother that father and his girlfriend were smoking marijuana in front of him and told Ka. to "put his head down." Mother also reported that Ke. was very angry, acting out and breaking things, and that Ke. recalled a lot of the abuse between mother and father, including father hitting mother. Mother also recalled an incident reported by Ke. where father asked Ke. whether mother's boyfriend was in the same bed as the children and Ke. denied that was the case. Father then told Ke. that he was a "motherfucking liar."

Mother told the CSW that there had never been anyone in the children's bed and she had not seen her ex-boyfriend since last year. She also denied that Ku. had any bruises, just a rash on his back, which the CSW visually confirmed. Mother explained that father had served 15 years in prison and when he got out in 2015, he moved in with her. She said that father

3

became abusive and once he slapped her so hard that she had a seizure, then dragged her into her bedroom. Mother ended the relationship after a domestic violence incident in front of the children." She showed the CSW a video of father recently picking up the children from her, where father was yelling and getting close to her phone. Mother said that she obtained a restraining order against father a few days prior.

The CSW also spoke to the children. Ke. told the CSW that he was mad because he saw father hit mother. Ke. said he did not like father, father called him a "motherfucking liar," once hit him in the face, and also hit him with his hands. Ke. also said he was afraid of father. Ka. said that father also called him a "motherfucking liar" when Ka. denied that there was a man in mother's home, and that made him sad. Ka. confirmed an instance where father was smoking in the car and told Ka. and father's girlfriend's child to put their heads down. Ka. also stated that father would hit him with his hands when he was in trouble, sometimes leaving red marks. Ka. said he was afraid of father and did not want to spend time with him. Ka. recalled that last year he saw father hit mother, that "blood was everywhere," and mother was on the floor. He told the CSW that he and his brothers slept at paternal grandmother's house when they visited father. K. told the CSW that he saw mother and father fight all the time and that father often attacked mother. K. stated he was not afraid of father because he was older now and had to protect mother, but that he did not feel safe with father.

Maternal grandmother told the CSW that the children stayed with paternal grandmother while father worked, but father was not allowed to stay there. She stated that father "hits

4

everyone." She had never seen mother and father fighting but the children had told her about father hitting mother and that father was very controlling.

The CSW spoke with paternal step-grandfather, who confirmed that the children stayed with him and paternal grandmother when father worked at night. He also reported that father did not stay in the home, but was living with another family member. The CSW interviewed father on November 30, 2020. Father stated that he felt mother was retaliating against him and had been threatening him. He claimed that he used to discipline the children with a "pop" on the leg or hand but never left any marks or bruises. Father denied ever hitting mother but stated that mother had hit him "a million times" but he never told anyone. Father reported that he had medication for his anxiety and depression, but did not take it because he did not feel he needed it. He admitted smoking marijuana but denied smoking in front of the children, claiming that mother was making it up.

Father submitted to a drug test the next day and tested positive for marijuana at a high level (1800 ng/ml). DCFS also reported that father had a criminal history including 15 years in prison for armed robbery and an arrest in July 2020 for domestic violence.

DCFS filed a dependency petition on December 8, 2020 on behalf of K., Ka., Ke., and Ku. under section 300, subdivisions (a) and (b)(1).[3] In counts a-1 and b-1, the petition alleged that

---

[3] Section 300 states, in relevant part, "A child who comes

mother and father had a history of violent altercations in the presence of the children, including striking each other on prior occasions. The petition alleged that on one occasion, father struck mother, causing her to bleed. The petition alleged that this violent conduct by father and mother endangered the physical health and safety of the children and placed them at risk of serious physical harm. In count a-2 and b-2, the petition alleged that father physically abused the children by striking them and that the children were afraid of father. The petition also alleged that mother knew of the physical abuse and failed to protect the children. Count b-3 alleged that father had a history of substance abuse and currently abused marijuana. The petition also alleged that father previously used marijuana while Ka. was in his care and father had a positive toxicology screen for marijuana on December 1, 2020. In addition, the petition alleged that mother knew or reasonably should have known of father's substance abuse and thus failed to protect the children. Count b-4 alleged that father had a history of mental and emotional problems, including PTSD, depression, and anxiety and that he failed to take his prescribed psychotropic medication.

---

within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶](a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child."

6

At the detention hearing, the court found a prima facie case for jurisdiction over the children under section 300. The court ordered the children removed from both parents and released to mother. The court also ordered monitored visitation for father.

## II. *Jurisdiction/disposition Report*

DCFS filed a jurisdiction/disposition report on January 29, 2021. When DCFS spoke with mother on January 15, 2021, she confirmed that there had been domestic violence with father. Mother stated: "He beat me when I was pregnant, he beat me in front of the kids." Mother also stated that she tried to prevent father from hitting the children, but he then hit her. She stated that father hit her in the face, knocked her down, and choked her. When asked how often the abuse occurred, she stated it occurred "randomly" and with increasing frequency. Mother told the DCFS investigator (DI) that she separated from father in 2019, but let father visit the children in her home, where he "kept being abusive."

Regarding marijuana use, mother stated that she and father used to smoke when they were together, but never did so in front of the children. She reported that the previous day, father was video chatting with the children and visibly smoking marijuana during the chat. Mother sent the DI a video showing father smoking a joint while on video chat with the children.

When the DI spoke with father, he admitted to "a partial factor" regarding the allegations of domestic violence, stating that he never hit mother, but he had pushed her and they would verbally argue. When asked about the pushing, father stated, "every time I ever touched her it was defense, I would never just attack her." He claimed that the children were not present for

7

these incidents "a lot of times." Father reported that mother was making up these allegations because she was mad at him, and that it was mother who attacked him with weapons, including stabbing him in the eye with a screwdriver. He denied physically abusing the children and stated he has not spanked the children since taking a parenting class. He also stated that he never smoked marijuana around the children and that he did not allow his marijuana use to affect the children. He admitted smoking marijuana the prior weekend, but that "I selectively smoke when I want," and never around the children. Father told DCFS that he was willing to do whatever was needed to reunite with the children.

Regarding his domestic violence arrest in July 2020, father stated that the incident was with another woman and the charges were dismissed. Father's girlfriend, A.C., was pregnant at the time. According to the arrest report, A.C. stated that she and father had a verbal dispute and she became upset and broke two windows of father's car with a metal object. Father and A.C. struggled over the metal object and both fell into a planter. A.C. stated that father then pressed the object against her throat and smashed her head into the planter multiple times. Responding police officers observed that A.C. had blood coming from her mouth and foliage on the back of her head. A.C. was taken to the hospital and father was arrested.

DCFS reported that father had not enrolled in individual therapy but he had enrolled in parenting and domestic violence classes in January 2021. DCFS noted that the court had

requested the department assess the case for informal supervision under sections 301 and 360, subdivision (b),[4] but DCFS concluded that "neither is appropriate for this family," given the allegations of continued domestic violence, father's denials regarding the allegations, and the statements from the children.

In a last minute information, DCFS detailed further interviews with the children on February 19, 2021. K. said he thought the DI should arrest father because "he beat the crap out of" mother. Ka. stated that father hit him with a fist and it hurt. Ka. told the DI that he knew what "weed" was, that father "always smokes weed," and he had seen father smoking while they were together on FaceTime. Ka. reiterated the incident where father smoked while Ka. was in the car. DCFS also reported that father had tested positive a second time for marijuana on February 12, 2021, at 2,777 ng/ml.

III. *Adjudication and disposition*

At the adjudication and disposition hearing on February

---

[4] Section 301 allows DCFS to "undertake a program of supervision" of a child in lieu of filing a section 300 petition, if the department "determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction." Under section 360, subdivision (b), "[i]f the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."

23, 2021, counsel for the children asked the court to sustain the petition, but to strike the allegations that mother acted violently for lack of proof. Mother's counsel also asked the court to make mother non-offending in the petition.

Father's counsel urged the court to dismiss the petition in its entirety. As relevant here, he argued that DCFS had not shown a nexus between father's consumption of marijuana and his ability to care for the children. He acknowledged there were "maybe one or two incidences . . . where the father is consuming marijuana in the presence of the children," but that it did not rise to the level of abuse. Regarding domestic violence, he argued that the "incidents ceased, essentially, once the parents split up," and that the most recent incident was in July 2020. Counsel also contended that the evidence demonstrated the last time any altercation occurred in front of the children was in 2019, and thus there was no evidence of a current risk to them.

Counsel for DCFS argued that the court should find the parents not credible and sustain the entire petition. He noted that father attempted to place all the blame for the domestic violence onto mother and that it was "obvious" from the children's statements that they "have been exposed to a very detrimental home environment based upon the conduct of their parents." Counsel also pointed to evidence that father was smoking marijuana during a video visit with the children as evidence of his inability to control his use.

The court found sufficient evidence to sustain the domestic violence counts as to father, reasoning that "[f]rom all the evidence that I read and reviewed, especially from the statements provided by [K., Ka., and Ke.], they all stated that the father hit

10

the mother, and the mother also admitted that the father beat her up, when she was pregnant, in front of the kids." The court also cited Ka.'s statement that he saw father hit mother last year, resulting in "blood everywhere," and that "it seems like all the children are afraid of" father. The court dismissed the counts alleging physical abuse by father (a-2, b-2), finding no evidence that the children suffered serious physical harm. The court also dismissed count b-4 regarding father's mental health history. The court also dismissed the allegations in the remaining counts regarding mother, including striking from the domestic violence counts (a-1, b-1) the allegation that mother struck father, and striking from count b-3 regarding father's substance abuse the allegations that mother knew of the abuse and failed to protect the children. Because the court found mother to be non-offending, it struck K. from the remaining counts and dismissed him from the petition. The court sustained counts a-1, b-1, and b-3 against father as amended.

The court found jurisdiction over the children pursuant to section 300, subdivisions (a) and (b). Turning to disposition, the court asked father's counsel if he had any objections to father's case plan. Counsel stated that the case plan included family preservation, which was an error as "the children are not placed with him." The court agreed. He also objected to the requirement that father complete a parenting class, arguing that father could address the issues in his domestic violence program and through counseling. The court overruled that objection.

The court found that removal from father was necessary "because of the findings that I made pursuant to the jurisdictional phase of this proceeding as well as the arguments

11

that I adopted from counsel." Accordingly, the court found by clear and convincing evidence pursuant to section 361 that it was reasonable and necessary to remove the children from father, there were no reasonable means to protect them without removal, and that DCFS made reasonable efforts to prevent removal but there were no services available to prevent further detention. The court ordered the children to remain released to mother, with family maintenance services to mother and monitored visitation for father.

Father timely appealed.

## DISCUSSION

Father argues that the evidence was insufficient to support the jurisdictional findings against him based on his history of domestic violence and marijuana use. He also contends that the court erred when it found by clear and convincing evidence that removal from his custody was necessary to protect the children from harm. We find no error and therefore affirm.

## I. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773, citation omitted.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to

12

support the findings of the trial court. "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'"" (*Ibid.*, citations omitted; see also *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["The [order] will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence."].) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

## II. *Jurisdictional Findings*

Father contends there is insufficient evidence to support the court's finding as to count b-1, that father's history of domestic violence placed the children at current risk of physical harm. We are not persuaded.[5]

Jurisdiction under section 300, subdivision (b)(1) requires proof by a preponderance of the evidence that a child "has suffered, or there is a substantial risk that the child will suffer,

_____

[5] Because we affirm the juvenile court's jurisdictional findings regarding domestic violence under section 300, subdivision (b)(1), we need not reach father's challenges to the court's findings of marijuana abuse or to jurisdiction under section 300, subdivision (a). (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].)

13

serious physical harm or illness," as a result of a parent's failure or inability to adequately supervise or protect the child. Where the child has not suffered actual harm, the evidence must establish "'that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm.'" (*In re A.G.* (2013) 220 Cal.App.4th 675, 683.)

The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) "'The purpose of dependency proceedings is to prevent risk, not ignore it.'" (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.) The court may consider past events in deciding whether a child currently needs the court's protection. (*Ibid.*) A parent's "'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383–1384, quoting *In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) However, evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300. "There must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135–136, abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622, 628.)

Domestic violence in the household where a child is living may support the exercise of jurisdiction if there is evidence that the violence harmed the child or placed the child at risk of harm, and "the violence is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 (*Daisy H.*).) Thus, courts have

upheld jurisdictional findings under section 300, subdivision (b)(1) where there was evidence that the children were exposed to domestic violence and evidence supported an "ongoing concern" about their future exposure to domestic violence. (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4; see also *In re T.V.* (2013) 217 Cal.App.4th 126, 134–135; *In re R.C.* (2012) 210 Cal.App.4th 930, 942.) Domestic violence is detrimental to children who are "'put in a position of physical danger from [spousal] violence'" or who are present to observe it. (*In re E.B., supra,* 184 Cal.App.4th at p. 576; see also *Daisy H., supra*, 192 Cal.App.4th at p. 717.)

Father argues that the evidence established a single incident of domestic violence in 2017 when he hit mother in the face, which he disputed. He contends that this incident was isolated and remote in time, and that there was no evidence of ongoing domestic violence after father and mother ended their relationship in 2019. As such, he argues that there was no evidence that the children were at risk of ongoing harm from father at the time of the jurisdictional hearing in February 2021.

The record does not support father's attempt to characterize his domestic violence history as a "one-time incident that had been eliminated by the time of the jurisdictional hearing." Instead, mother, Ka., and Ke. all told DCFS about ongoing domestic violence while mother and father were in a relationship. Mother stated that father's abuse was "random" but worsened until the incident in which he slapped her so hard that she had a seizure, then dragged her into the bedroom. She also told DCFS that father "beat" her when she was pregnant and

15

in front of the children. Mother recalled having to intervene to protect the children from father, which resulted in father hitting her in the face, knocking her down, and choking her. Both Ke. and Ka. reported seeing father hit mother, and Ka. recalled an incident in 2019 where father hit mother resulting in blood "everywhere." Both children said they were afraid of father. Additionally, mother's oldest son, K., stated that father often attacked mother, "beat the crap out of" her, and that K. felt he had to protect her. Maternal grandmother also told DCFS that father "hits everyone" and that the children had told her that father hit mother.

There was also evidence that father's violent conduct continued even after he and mother separated in 2019. Mother told DCFS that she continued to let father visit the children in her home, but he "kept being abusive." Mother also showed the CSW a recent cell phone video of father acting aggressively while picking up the children, including yelling and moving close to her phone, prompting mother to obtain a restraining order against father. Thus, the evidence of father's ongoing domestic violence against mother, often in front of the children, supported the trial court's finding of a continuing risk of physical harm to the children. Father's contention that he had resolved any domestic violence issues is also belied by his involvement in a serious incident with his girlfriend in July 2020. The girlfriend, who was pregnant at the time, told police that during the altercation, father pressed a metal object to her throat and smashed her head into a planter multiple times.

Moreover, contrary to father's assertion that he "had taken responsibility" for the domestic violence incident with mother,

16

father continued to deny that he had engaged in any violence and to blame mother. This conduct further supports the trial court's finding that father's domestic violence issues had not been resolved and that the risk to the children remained. (See *V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Although father points out that he disputed mother's version of events, we will not evaluate the court's credibility findings or reweigh the evidence on appeal. (See, e.g., *In re Sheila B.* (1993) 19 Cal.App.4th 187, 200.)

Given our conclusion that the evidence does not support father's contention that he engaged in a single domestic violence incident several years before the juvenile court's assertion of jurisdiction, the cases father cites are inapposite. For example, in *Daisy H., supra*, 192 Cal.App.4th at p. 717, the court found insufficient evidence of a current risk of harm where father pulled mother's hair and choked her seven years prior to the filing of the petition. The incident occurred outside of the presence of the children and there was "no evidence of any ongoing violence between the parents who are now separated." (*Ibid*.) The other cases father cites are similarly distinguishable. (See *In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 [no continuing risk of harm based on a single incident of drinking and driving that injured the children]; *In re Ma.V.* (2021) 64 Cal.App.5th 11, 23 [no jurisdiction where court found that mother's history as a victim of domestic violence "'was an old situation'" and mother had no further contact with perpetrator].)

17

"The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case." (*In re Drake M*. (2012) 211 Cal.App.4th 754, 766.) Considering the record as a whole in the light favorable to the court's determination, we conclude a reasonable trier of fact could have found that father's conduct presented an ongoing risk of harm to his three young children. We therefore find that substantial evidence supports the juvenile court's exercise of jurisdiction over Ka., Ke., and Ku. under section 300, subdivision (b)(1).

## III. *Removal Order*

Father also contends the juvenile court erred in finding by clear and convincing evidence that the children were at a substantial risk of harm and there were no reasonable means to protect them without removing them from father's care. We conclude substantial evidence supports the court's removal order.

Pursuant to section 361, subdivision (d), the juvenile court may remove a child from the custody of a parent with whom the child does not reside if it finds, by clear and convincing evidence, "there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's . . . physical custody." "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re D.B*. (2018) 26 Cal.App.5th

18

320, 328 (*D.B.*), citing *In re T.V.*, *supra*, 217 Cal.App.4th at pp. 135-136.)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*D.B., supra*, 26 Cal.App.5th at p. 332, citing *In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) The court "must also consider whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody." (*D.B., supra*, 26 Cal.App.5th at p. 332, citing § 361, subd. (c)(1).)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012; see also *V.L., supra*, 54 Cal.App.5th at p. 155 [finding that "*O.B.* is controlling in dependency cases"].)

Respondent contends that father forfeited his ability to challenge the removal order because he did not object to it below. Generally, issues not raised in the dependency court cannot be raised on appeal. "Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile

19

court prevents the parent from presenting the issue to the appellate court." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339 [collecting cases].) "As some of these courts have noted, any other rule would permit a party to . . . deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*Ibid.*)

However, as father points out, "[t]he contention that a judgment is not supported by substantial evidence . . . is an obvious exception" to the forfeiture rule. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464, citation omitted; see also *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [no forfeiture of claim challenging the court's dispositional order on the ground of insufficient evidence]; *In re Brian P.* (2002) 99 Cal.App.4th 616, 623 ["When the merits are contested, a parent is not required to object to the social service agency's failure to carry its burden of proof."].)

We agree with father that he may challenge the sufficiency of the evidence to support the trial court's removal order despite failing to object below. On the other hand, to the extent father raises procedural challenges, such as his assertion that DCFS failed to conduct a required assessment or the court failed to make findings on the record required by section 361, those challenges are forfeited. (See, e.g., *In re Brian P.*, *supra*, 99 Cal.App.4th at p. 623 [finding that parent did not forfeit challenge to sufficiency of the evidence, but did forfeit the objection that an adoption assessment did not comply with statutory requirements].)

20

Turning to father's remaining challenge, we conclude that there was substantial evidence in the record to meet the heightened standard for removal. In other words, the evidence was sufficient for the court to find it highly probable that the children would be at substantial risk of harm if they remained in father's custody. As discussed in section II, *ante*, mother, K., Ka., and Ke. detailed significant and ongoing domestic violence by father against mother, in the children's presence. Further, the evidence supported the court's conclusion that father's conduct did not cease after he and mother separated. At the time of disposition, father had not accepted responsibility for his acts of domestic violence against mother or his girlfriend and he had not completed his domestic violence program or enrolled in individual therapy. It was not error for the trial court to conclude that the risk to the children from father's conduct was ongoing. As such, father's citation to cases that do not involve evidence of ongoing domestic violence are not persuasive here. (See *In re I.R.* (2021) 61 Cal.App.5th 510, 521 [reversing removal order based on two incidents of domestic violence where there was no subsequent contact between the parents and no evidence of other domestic violence].)

We also find substantial evidence from which the juvenile court could have found it highly probable that there were no reasonable means to protect the three young children without removing them from father's custody. (§ 361, subds. (d), (e); *D.B., supra*, 26 Cal.App.5th at p. 332.) Father argues there were "mitigating factors that obviated the need for a formal removal order," and contends that DCFS should have assessed the availability of informal supervision pursuant to sections 301 and

360, subdivision (b), as the juvenile court had requested earlier in the proceedings. The record reflects that DCFS made this assessment, but concluded that option would not be appropriate given the evidence of continued domestic violence, the children's statements that they were fearful of father, and father's denials regarding his conduct. Father makes no other suggestions of reasonable alternatives DCFS could have implemented to ensure the children's safety, particularly given the evidence that father was living with a family friend and the children were staying at paternal grandmother's house when visiting father. Although father had agreed to take necessary steps to comply with the court's orders, at the time of the dispositional hearing he continued to lack insight into his violent conduct and not yet completed any programs or therapy. Thus, substantial evidence supported the court's conclusion that removal from father was necessary to protect the children from a substantial risk of harm.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.

22